IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| WILBERT J. ODEN, | ) No. C 05-0183 JSW (PR) |
| | ) |
| Plaintiff, | ) **ORDER DENYING DEFENDANT** |
| | ) **LAMARQUE'S MOTION TO DISMISS,** |
| v. | ) **SETTING NEW SCHEDULING ORDER** |
| | ) **FOR DISPOSITIVE MOTIONS, AND** |
| A. A. LAMARQUE and APPEALS | ) **DIRECTING THE CLERK OF THE** |
| COORDINATOR RUISI, | ) **COURT TO OBTAIN A SERVICE** |
| | ) **ADDRESS FOR DEFENDANT RUISI** |
| Defendants. | ) |
| _____ | ) **(Docket no. 10)** |

## INTRODUCTION

Plaintiff Wilbert J. Oden is a prisoner of the State of California who is incarcerated at Salinas Valley State Prison (SVSP). He filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, complaining of violations of his civil rights at that facility. In an order dated March 14, 2005, the Court found cognizable Plaintiff's claim of deliberate indifference to his safety and ordered the complaint served on Defendants Lamarque and Ruisi. Defendant Lamarque has filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted. Plaintiff has filed an opposition and Defendant has filed a reply.[1]

## STATEMENT OF FACTS

For purposes of this order, the Court takes as true the following allegations made by Plaintiff in his complaint. Plaintiff is a permanently disabled full-time wheelchair user. On February 25, 2003, he was transferred to SVSP, a Level IV prison which, according to Plaintiff, is one of California's most "racially violent" prisons. After Plaintiff was assigned housing in the general population, he filed an administrative

---

[1]According to Deputy Attorney General Virginia I. Papan, who is representing Defendant Lamarque, Defendant Ruisi has not yet been served in this case and no appearance is made on her behalf.

appeal claiming that the housing assignment was a threat to his safety and security because of the violent nature of the racially volatile general population and his disabled status.  He asked to be transferred to medical facility.  Appeals Coordinator Ruisi told Plaintiff that she had only ever recommended two medical transfers and would not recommend one for Plaintiff, because he was thirty-nine years old and African American, and that there are dangers that go along with incarceration.  She told Plaintiff the first things she considers in terms of transfer requests is the inmate's age and ethnicity, and that she transfers Caucasian men aged fifty-five and older, "never an African American or Hispanic American--unless they are 'terminal.'"  She then asked Plaintiff whether he had thought about his victim's right to safety and security, and told Plaintiff she would not recommend a transfer for him just because he felt unsafe in general population.

Plaintiff eventually sought State habeas corpus relief, which first was denied by Judge Robert Moony at the superior court, who found that even though Plaintiff is mobility impaired, he had failed to state a prima facie claim for relief.  In an order dated September 18, 2003, the judge concluded: "Prison is a dangerous environment but the institution determined [Oden] is appropriately housed in the [Disability Placement Program] facility.  If [Oden] has an immediate safety concern, he should notify prison staff."  Pl.'s Compl., Ex. W1.  On January 23, 2004, the California Court of Appeal denied Plaintiff's petition for habeas relief on the ground that he was appropriately being housed at a Level IV facility and there was no showing of deliberate indifference to his medical or safety concerns.  *Id.*, Ex. Y1.  On September 1, 2004, the California Supreme Court summarily denied Plaintiff's petition for habeas relief, but Justice Kennard wrote that she was of the opinion that the petition should be granted.  *Id.*, Ex. 01.

## DISCUSSION

I.    MOTION TO DISMISS

A.    Standard of Review

Defendant Lamarque moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedures on the ground that it fails to state a claim upon which

1   relief may be granted.  Dismissal for failure to state a claim is a ruling on a question of

2   law.  *Parks School of Business, Inc., v. Symington,* 51 F.3d 1480, 1483 (9th Cir. 1995).

3   "'[A] complaint should not be dismissed for failure to state a claim unless it appears

4   beyond doubt that the plaintiff can prove no set of facts in support of his claim which

5   would entitle him to relief.'"  *Terracom v. Valley National Bank,* 49 F.3d 555, 558 (9th

6   Cir. 1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).  The issue is not

7   whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence

8   to support his claim.  *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).

9       Allegations of fact in the complaint must be taken as true and construed in the

10  light most favorable to the non-moving party.  *Symington,* 51 F.3d at 1484.  But

11  conclusory allegations without more are insufficient to defeat a motion to dismiss for

12  failure to state a claim, *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 810 (9th Cir.

13  1988).  The court "is not required to accept legal conclusions cast in the form of factual

14  allegations if those conclusions cannot reasonably be drawn from the facts alleged."

15  *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994).

16      Review is limited to the contents of the complaint, *id.*, including documents

17  physically attached to the complaint or documents the complaint necessarily relies on and

18  whose authenticity is not contested, *Lee v. County of Los Angeles,* 250 F.3d 668, 688 (9th

19  Cir. 2001).

20      B.    Legal Claims

21      The Eighth Amendment requires that prison officials take reasonable measures to

22  guarantee the safety of prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In

23  particular, prison officials have a duty to protect prisoners from violence at the hands of

24  other prisoners.  *Id.* at 833; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005);

25  *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *Gillespie v. Civiletti*, 629 F.2d

26  637, 642 & n.3 (9th Cir. 1980).  The failure of prison officials to protect inmates from

27  attacks by other inmates or from dangerous conditions at the prison violates the Eighth

28  Amendment only when two requirements are met: (1) the deprivation alleged is,

1   objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately

2   indifferent to inmate safety. *Farmer*, 511 U.S. at 834; *Hearns*, 413 F.3d at 1040-41.

3       A prisoner need not wait until he is actually assaulted to state a claim and obtain

4   relief. *See Farmer*, 511 U.S. at 845; *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir.

5   1973); *Stickney v. List*, 519 F. Supp. 617, 620 (D. Nev. 1981). A prison official need not

6   "believe to a moral certainty that one inmate intends to attack another at a given place at

7   a time certain before that officer is obligated to take steps to prevent such an assault."

8   *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). If the court finds the Eighth

9   Amendment's objective and subjective requirements satisfied, it may grant appropriate

10  relief. *See Farmer*, 511 U.S. at 845-46. Allegations in a pro se complaint sufficient to

11  raise an inference that the named prison officials acted with deliberate indifference--i.e,

12  that they knew that plaintiff faced a substantial risk of serious harm and disregarded that

13  risk by failing to take reasonable measures to abate it--states a "failure-to-protect" claim.

14  *See Hearns*, 413 F.3d at 1041-42

15      C.   Analysis

16      Defendant Lamarque maintains that, as a matter of law, Plaintiff cannot state a

17  claim for deliberate indifference to his safety because (1) he has alleged no facts which

18  support a claim for supervisorial liability, (2) he cannot maintain a suit for equitable

19  relief because of a pending class action, and (3) Lamarque is entitled to qualified

20  immunity.

21          1.   Supervisorial Liability

22      In its order of service the Court wrote:

23      In this case, Plaintiff has set forth sufficient facts to assert a claim for
        deliberate indifference to his safety in failing to place him on a facility that
24      is appropriate to his physical limitations. Although Plaintiff's complaint
        with regard to this claim (ground one in the complaint) does not identify
25      the official that he claims is responsible, his complaint names Warden
        Lamarque as a Defendant and it can be fairly inferred that Lamarque is the
26      proper Defendant with regard to this claim.

27  Order at 3.

28      Defendant Lamarque argues that Plaintiff has not asserted grounds for

supervisorial liability because he has alleged only that Lamarque was serving as the warden at SVSP at the time Plaintiff was placed in the general population, and that Lamarque "apparently instructed the Appeals Coordinator ... [to] change the theme of petitioner's appeal from 'safety and security' to that of a non-existing medical transfer." Pl.'s Compl. at 4-5.

In response, citing to page 60 of his complaint, Plaintiff states that he sent his administrative appeal directly to Lamarque along with a letter, which was stamped "Received on April 15, 2003, " in which he asked Lamarque for help in resolving his housing issue.  However, Lamarque did not respond or act on his concerns.

A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Evidence that a prison supervisor was personally involved in an unconstitutional transfer and denied all appeals of the transfer, for example, may suffice. *See Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *see also Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998) (supervisor who signed internal affairs report dismissing complaint against officer despite evidence of officer's use of excessive force may be liable for damages).  To be liable for unsafe prison conditions under the Eighth Amendment, a supervisor must have known that there was a substantial risk that his actions would cause inmates harm, and there must be a causal connection between the supervisor's actions and the plaintiff's harm.  *See Jeffers v. Gomez*, 267 F.3d 895, 914-16 (9th Cir. 2001).

Here, the allegations in Plaintiff's complaint, along with documents physically attached thereto (such as Plaintiff's state habeas corpus petitions and the Director's Level

Decision denying Plaintiff's appeal, which was copied to "Warden, SVSP") are sufficient to state a claim for supervisorial liability against Defendant Lamarque. Accordingly, the motion to dismiss on this ground is denied.

### 2.  Pending Class Action

Defendant maintains that Plaintiff should not be allowed to proceed with his claim for equitable relief because the class action suit of *Armstrong v. Davis*, No. C 94-2307 CW (N.D. Cal.), which pertains to accommodations for disabled prisoners within the California Department of Corrections, is in the remedial stage under the supervision of the court. Therefore, Plaintiff must make his equitable claim for relief through the *Armstrong* class representative and may not maintain an individual action.

Plaintiff asserts that his injunctive relief claim does not fall under *Armstrong* because it seeks relief which will ensure his safety in a Level IV institution, and not medical relief or accommodation.

Defendant replies that under *Armstrong* Plaintiff is appropriately housed at a Level IV institution with a program for disabled prisoners, and that he does not have a right to be transferred elsewhere.

Individual suits for injunctive and equitable relief from alleged unconstitutional prison conditions cannot be brought where there is a pending class action suit involving the same subject matter. *See McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991); *Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988) (en banc). "Individual members of the class and other prisoners may assert any equitable or declaratory claims they have, but they must do so by urging further actions through the class representative and attorney, including contempt proceedings, or by intervention in the class action." *Id.* Only where a plaintiff brings an action for equitable relief on the same claims involved in the class action is dismissal appropriate. *Id.* at 1102.

*Armstrong* is a class action pertaining to medical care and accommodations for disabled prisoners. Although Plaintiff is disabled, he does not seek medical care or accommodation for his disability. Rather, he maintains that his housing situation creates

1   an undue danger to his physical safety and security.  At this stage of the proceedings, the

2   facts have not been developed sufficiently for the Court to say that Plaintiff's claim for

3   equitable relief must be resolved under *Armstrong*.  Accordingly, the motion to dismiss

4   on this ground is denied.

5               3.    Qualified Immunity

6         Defendant argues that he is entitled to qualified immunity because Plaintiff has

7   failed to show how his conduct violated Plaintiff's constitutional rights.  That is, even

8   assuming that Defendant Lamarque had anything to do with Plaintiff's housing, he was

9   merely following the departmental procedures in place when Plaintiff was given his

10  housing assignment.  As such, even if there was some violation of prison policy, that

11  policy violation does not rise to the level of a § 1983 violation.

12        Plaintiff argues that because of the level of ongoing violence in the general

13  population at SVSP, a reasonable prison official in Defendant Lamarque's position would

14  know that putting somebody in Plaintiff's physical condition in the general population

15  amounted to deliberate indifference to his safety.

16        Deliberate indifference may be shown by the existence of a "pervasive risk of

17  harm to inmates from other prisoners" at a given institution, and the failure by prison

18  officials to reasonably respond to that risk.  *See Martin v. White*, 742 F.2d 469, 474 (8th

19  Cir. 1984).  While a "pervasive risk of harm" cannot generally be shown by pointing to a

20  single incident or isolated event, it may be established by much less than proof of a reign

21  of violence and terror in the particular institution.  *See id.*  Further, it is not necessary to

22  show that all prisoners suffer a pervasive risk of harm.  Rather, it is enough that an

23  identifiable group of prisoners do, if the complainant is a member of that group.  *See id.*

24        The Court finds that Defendant Lamarque has not established that, as a matter of

25  law, he is entitled to qualified immunity on Plaintiff's deliberate indifference claim.

26  Accordingly, the motion to dismiss on this ground is denied.

27  II.   DEFENDANT RUISI

28        In its order of service the Court found Plaintiff stated a cognizable claim for relief

1    against Defendant SVSP Appeals Coordinator Ruisi and directed the United States

2    Marshal to serve her with a summons and complaint.  The court file shows that service

3    by mail was attempted on April 4, 2005, but as of July 27, 2005, no acknowledgment of

4    service had been received from Ruisi.

5            Federal Rule of Civil Procedure 4(m) contemplates that service of process

6    normally will be accomplished within four months of the filing of the complaint.

7    Although the Court can order the United States Marshal to serve process on a defendant

8    when the plaintiff is indigent, it is the plaintiff's responsibility to provide a name and

9    address for each defendant to be served.  Both the Court and the California Department

10   of Corrections recognize, however, that prisoners proceeding pro se will often be unable

11   to obtain forwarding addresses for prison employees.  Accordingly, a system has been

12   established by which the California Department of Corrections will provide to the Court,

13   under seal, a forwarding address for the defendant if the Department is in possession of

14   such.  Therefore, in accord with this system, the Court's docket clerk shall mail an

15   address inquiry letter to the designated contact-person at the California Department of

16   Corrections.  The letter shall ask for the proper service address for Defendant Ruisi to be

17   provided to the Court so that the Court can then order the United States Marshal to make

18   another attempt to serve the complaint on Defendant Ruisi.

19                                  **CONCLUSION**

20           For the foregoing reasons the Court orders as follows,

21           1.  Defendant Lamarque's motion to dismiss the complaint is DENIED.  (Docket

22   no. 10.)

23           Within **sixty (60) days** from the date of this order, Defendant Lamarque shall file a

24   motion for summary judgment or other dispositive motion.  The motion shall be supported by

25   adequate factual documentation and shall conform in all respects to Federal Rule of Civil

26   Procedure 56.  If Defendant is of the opinion that this case cannot be resolved by summary

27   judgment, he shall so inform the Court prior to the date the summary judgment motion is due.

28   All papers filed with the Court shall be promptly served on Plaintiff.

Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendant no later than **sixty (60) days** from the date on which he is served with the dispositive motion. The Ninth Circuit has held that the following notice should be given to pro se plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in [Defendants'] declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of [Defendants], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc). Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendant's dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff is advised that if he fails to submit declarations contesting the version of the facts contained in Defendant's declarations, Defendant's version may be taken as true and the case may be decided in Defendant's favor without a trial. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

If Defendant wishes to file a reply brief, he shall do so no later than **fifteen (15) days** after the date Plaintiff's opposition is filed. The motion shall be deemed submitted as of the date

the reply brief is due.  No hearing will be held on the motion unless the Court so orders at a later date.

2. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. Leave of Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

3. All communications by Plaintiff with the Court must be served on Defendants, or their counsel once counsel has been designated, by mailing a true copy of the document to Defendants or their counsel.

4. It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

5. Extensions of time are not favored, though reasonable extensions will be granted. However, the party making a motion for an extension of time is not relieved from his or her duty to comply with the deadlines set by the Court merely by having made a motion for an extension of time.  The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is issued.  Any motion for an extension of time must be filed no later than **fifteen (15) days** prior to the deadline sought to be extended.

6. The Clerk of the Court shall mail a letter of address inquiry pertaining to Defendant Ruisi to the California Department of Corrections, as set forth above.

IT IS SO ORDERED.

DATED: February 16, 2006

_Jeffrey S. White_
JEFFREY S. WHITE
United States District Judge